U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 2 4 2006

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| ELIXIR INDUSTRIES, INC. | CIVIL ACTION NO. 05-1959 |
|---|---|
| -vs- | JUDGE DRELL |
| CITY BANK AND TRUST CO. | MAGISTRATE JUDGE KIRK |

## RULING

Before the court is an appeal from the final order of the bankruptcy court issued on 25 August 2005. The appellant, Elixir Industries, Inc. ("Elixir"), filed its brief on 27 December 2005 [#7]. The appellee, City Bank & Trust Co. ("City Bank"), filed its brief on 11 January 2006 [#8]. Oral argument was held on 14 August 2006. Considering the argument and briefs of counsel, and for the reasons set forth below, the decision of the bankruptcy court will be AFFIRMED.

## FACTUAL AND PROCEDURAL HISTORY

Between 1994 and 1996, City Bank made loans to Ahern Enterprises, Inc. ("Ahern") that were secured by a mortgage on, *inter alia*, a manufacturing facility and the land owned by Ahern (the "Property"). During 1996, four judgments were entered against Ahern in the relevant mortgage records. The first of these judgments entered was a judgment "in the amount of $40,961.53, together with legal interest, attorney's fees, and costs, filed and recorded on" 23 May 1996. Appellant Br. 2. On 31 July 1996, Ahern filed for bankruptcy protection under

5

Chapter 11.

On 30 May 1997, the bankruptcy court issued an order confirming a Chapter 11 Plan of Reorganization proposed by Ahern. On 26 September 1997, City Bank filed a motion for authority to execute a *dation en paiement* and to cancel indebtedness. In this motion, City Bank sought to cancel the judgments, including the judgment in favor of Elixir, with respect to two parcels of land owned by Ahern, but the bank did not move to cancel these judgments with respect to the Property in this motion. On 22 October 1997, the bankruptcy court approved and allowed the two parcels of land to be dationed. On 31 October 1997, the bankruptcy court ordered the Clerk of Court in Natchitoches Parish to cancel the judgments, including Elixir's judgment, against the same two parcels of land.

In addition, on 30 September 1997, Ahern filed an objection to a proof of claim filed by Elixir, in the amount of $53,406.02. On 10 November 1997, Ahern moved to convert its Chapter 11 proceeding into a Chapter 7. The bankruptcy court granted this motion on 10 November 1997, effecting the conversion. On 20 February 1998, City Bank and the Chapter 7 Trustee, Brett Brunson, filed a joint motion of intent to sell collateral to a secured creditor and pay section 506(c) costs. This motion requested approval to allow Ahern to sell the Property as well as other items of movable property to City Bank in exchange for a credit of $693,000.00 against City Bank's claim against the bankruptcy estate. This

$693,000.00 represented only the secured portion of City Bank's claim, with the remaining $471,366.58 representing unsecured debt. The bankruptcy court signed an order on 12 March 1998 authorizing and confirming this sale. On 22 March 1998, by use of a Trustee's deed, the Trustee conveyed the Property and the subject items of movable property to City Bank.

City Bank later sold the property to a third party, subject to a conventional lien in favor of the bank. The third party later also filed for bankruptcy and City Bank reacquired the property as a result of an approved foreclosure.

After several years of dormancy, these proceedings were resurrected in April 2005, when City Bank became aware that the four judgments against the Property had never been cancelled. On 29 April 2005, therefore, City Bank filed a complaint for declaratory judgment seeking a determination that the [j]udgments should properly have been cancelled given the terms of the Plan and/or applicable bankruptcy law." Compl. for Declaratory Relief ¶ 21. This appeal concerns only the lien claimed by Elixir, and not the other three lien holders.

In its 25 August 2005 order, the bankruptcy court ruled that "the lien in favor of . . . Elixir Industries [is] void" and directed the Clerk of Court for Natchitoches Parish "to cancel [the Judgment] from the Mortgage Records in full." Order Mots. Summ. J. The bankruptcy judge reasoned that Ahern had earlier timely filed an objection to Elixir's proof of claim "that was sustained by

3

a Final Order of the Court." Tr. Hr'g Mots. Summ. J., p.23, lns. 15-16. On 7 April 1998, the bankruptcy court entered an order sustaining the objection. This final order reduced the claim to a general non-priority claim for $40,961.53. More specifically, in its original objection Ahern argued that "there is no unencumbered property or assets to which the judgment could attach." Ahern Objection ¶ 6. As such, the lien was ruled void. Elixir timely appealed the bankruptcy court's ruling on 25 October 2005.

## **DISCUSSION**

The parties agree that this appeal only involves issues of law. As such, the standard of review in this Court is *de novo*. In re Coppola, 419 F.3d 323, 326 (5th Cir. 2005) (noting that courts of appeals and district courts "review the bankruptcy court's conclusions of law de novo"); cf. In re Young, 995 F.2d 547, 548 (5th Cir. 1993) ("A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review and will be reversed only if, considering all the evidence, we are left with the definite and firm conviction that a mistake has been made."). The parties agree that this appeal is based on two issues. First, "[w]hether the bankruptcy court erred as a matter of law by concluding that the classification of the claim filed by Elixir in the bankruptcy case as a general unsecured non-priority claim extinguished Elixir's judicial lien." Appellant Br. 1. Second, "[w]hether Elixir's judicial lien on the Property should be recognized and maintained." Id.

4

I.  **Whether the bankruptcy court erred as a matter of law by concluding that the classification of the claim filed by Elixir in the bankruptcy case as a general unsecured non-priority claim extinguished Elixir's judicial lien.**

Elixir argues, essentially, the bankruptcy court erred in ruling that the order sustaining Ahern's objection was sufficient to render the claim unsecured because "classification of a proof of claim in response to a claim objection affects how a creditor may be treated for distribution purposes in a Chapter 7 bankruptcy case, but, as a matter of law, such classification has no effect on that creditor's underlying lien." Appellant Br. 7. Applying this position under Chapter 11, a creditor need not file a proof of claim in order to protect a lien, but instead a proof of claim is merely required in order for the creditor to claim a portion of the distributions in the bankruptcy case.[1] See In re Simmons, 765 F.2d 547, 551 (5th Cir. 1985). Elixir argues that the objection did not contest the validity of the lien itself, but instead focused on the fact that "there is no unencumbered property or assets [in the bankruptcy estate] to which the judgment could attach." Appellant Br. 10. In essence, Elixir's position is that the "judicial lien passed through the bankruptcy case unaffected notwithstanding the classification of Elixir's claim as unsecured for distribution purposes. . . . [T]he 'finality' of that order also has no impact on the validity of Elixir's judicial lien." Id.

City Bank responds that Elixir's claim was an unsecured claim rather than

---

[1] This might be important, for example, if the lien was undersecured by the property.

5

a secured claim and that therefore this reasoning is flawed. See 11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."). It contends that no collateral secured that claim and that Elixir did not object to this assertion at the time of the objection or within ten days of the order becoming final. City Bank further argues Elixir's assertion that the judgment is secured is barred by the principles of collateral estoppel and *res judicata*.

At argument, counsel for Elixir re-urged the Court to apply the bankruptcy's judge's findings only to the issue of classification of claims. Counsel, however, conceded that Elixir was unable to present any authority in support of this position. In the absence of any such authority, we decline to "split" the bankruptcy judge's findings as suggested by Elixir. Therefore City Bank must prevail on this issue.

II. **Whether Elixir's judicial lien on the Property should be recognized and maintained.**

The second issue on appeal involves alternative justifications why the lien may not be valid, and therefore why the instant appeal should be denied, even if we determine the bankruptcy court's reasoning to be flawed. Although Elixir did not file a reply brief, it anticipated some of these arguments and addressed them in its initial brief.

A. Confirmation

City Bank argues that the confirmation of the Chapter 11 plan cancelled the judicial lien. Elixir first points out that the bankruptcy court refused to cancel another creditor's lien in the same case using this rationale, and therefore implicitly rejected the validity of this argument. In support of its position, City Bank cites to two circuit court cases from the Fourth and Seventh Circuits respectively. In re Regional Bldg. Sys., 254 F.3d 528 (4th Cir. 2001); Matter of Penrod, 50 F.3d 459 (7th Cir. 1995).

Regional Building Systems and Penrod both involved confirmed Chapter 11 plans which were held to extinguish liens. Elixir distinguishes these cases on the grounds that the bankruptcy code permits a bankruptcy plan itself to deviate from the default rule that confirmation extinguishes liens. Indeed, 11 U.S.C. § 1141 states that "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by a plan is free and clear of all claims and interests of creditors." Appellant Br. 14 (emphasis added by appellant). Elixir argues that such a deviation exists in the plan in this case, as discussed below.

B. Consummation

The crux of Elixir's argument rests on a detailed examination of the plan language itself. Elixir notes that Section 8.14 of the plan reads,

7

> [u]pon consummation of the Plan, its provisions will bind, and inure to the benefit of, the Reorganized Debtor . . . . Except as otherwise specifically provided by the Plan, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release of (I) all Claims and Causes of Action against, liabilities of, liens on, obligations of and Interest in the Debtor or the direct or indirect assets and properties of the Debtor whether known or unknown.

Appellant Br. 15 (emphasis added by appellant). The plan does not define "consummation." The plan defines "consummation date" as the last of the following two dates: 1) when the confirmation order becomes final, or 2) when the Class 1 claims have been paid. Appellant Br. 15. Accordingly, Elixir argues that the Class 1 claims, which are administrative costs, were not paid in full prior to conversion to a Chapter 7 liquidation. As such, Elixir argues that consummation never occurred and that therefore under the specific language of the plan the lien was never wiped out. City Bank states that these costs were paid at least in part during the course of the Chapter 7 case but is unclear as to whether they were ever paid in full.

In contrast, City Bank argues that the statutory definition of "substantial consummation" should apply to the use of the term "consummation" in the plan rather than relying on the "consummation date." The statutory definition of substantial consummation includes,

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business

8

> or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). Under this definition, consummation of the plan has occurred, thereby wiping out the lien. City Bank argues that this definition is preferable because the plan uses both the terms consummation date and consummation, and therefore had the plan intended for consummation to mean the time when the consummation date occurs, it could have said as such. We agree with City Bank's reasoning and believe that the Bankruptcy Code is the proper source to clarify the aforementioned dispute with respect to the definition of "consummation." See In re U.S. Brass Corp., 301 F.3d 296, 307 (5th Cir. 2002) (observing that "the answer lies in the Bankruptcy Code" in interpreting agreement to arbitrate in light of reorganization plan). As such, Elixir's argument fails.

C. Reinstatement

Finally, Elixir argues that the conversion to Chapter 7 reinstated the liens even if they were cancelled under Chapter 11. City Bank responds by pointing out that all of the case law cited by Elixir for this point is from Chapter 13, rather than Chapter 11, cases. This disagreement reflects a fundamental tension between the two briefs. Elixir frequently cites to Chapter 13 cases as analogous authority, and it conceded at oral argument that it could only find Chapter 13 cases to support its position. City Bank responds that these cases are not applicable because the principles behind Chapter 11 and Chapter 13 are meaningfully different. Essentially, the argument is that Chapter 13's simplicity is such that its effect is not intended to be as sweeping with respect to

9

obligations of the debtor. For example, City Bank argues that authority discussing lien survival in Chapter 13 plans is irrelevant in the more sweeping scenario of a Chapter 11 plan. See Appellee Br. 11-14. As Elixir does not cite any authority for the proposition that Chapter 13 case law may serve as analogous authority to Chapter 11 cases, we also find that Elixir's reasoning is inapposite in this instance. See In re Regional Bldg. Sys., 254 F.3d 528, 532 (4th Cir. 2001) (observing divergent treatment of liens not only because of the use of different statutory language, but also because "Chapter 11 and Chapter 13 serve different purposes").

## CONCLUSION

For the foregoing reasons, the final order of the bankruptcy court will be AFFIRMED.

SIGNED on this 24th day of August, 2006, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE